# 𝕮𝖆𝖘𝖊𝖘

# FIFTH DEPARTMENT

# GENERAL TERM,

## 𝕸𝖆𝖗𝖈𝖍, 1894.

---

Eliza B. McGowan, Plaintiff, v. Supreme Council of the Catholic Mutual Benefit Association, Defendant.

*Mutual beneficial certificate — waiver of default in the payment of an assessment — estoppel.*

While the unconditional receipt by a mutual benefit association of an assessment from one of its members, after the time had expired for its payment, may constitute a waiver of the default of such member and operate to reinstate him in its membership, the receipt thereof by an officer of such association with qualified power will not, in the face of a provision in its constitution that he should not receive such assessment except where it is tendered in an open meeting of the association, have that effect unless the payment to him is in some manner ratified by the association.

To support an estoppel the person asserting the same must establish that he was induced by the course of dealing of the person against whom he asserts the estoppel to rely upon it for his protection.

Motion by the plaintiff, Eliza B. McGowan, for a new trial on a case containing exceptions ordered to be heard at the General Term in the first instance, after a verdict in favor of the defendant, rendered by direction of the court, on a trial at the Erie Circuit, on the 3d day of May, 1893.

This action was brought to recover $2,000 upon a certificate issued to Richard B. McGowan upon his life, payable to the plaintiff, his mother. McGowan died February 27, 1892.

*Adolph Rebadow,* for the plaintiff.

*Frank C. Loughlin,* for the defendant.

Bradley, J. :

The plaintiff's son, Richard B. McGowan, became a member of the Holy Angels' Branch No. 7 of the defendant, and certificate of membership was issued to him May 7, 1888. It was to the effect that he was entitled to all the rights and privileges of membership in the defendant and to participate in the beneficiary fund of the association to the amount of $2,000, which should at his death be paid to his mother, the plaintiff. The certificate, by its terms, was issued upon the condition that Richard B. McGowan should in every particular, while a member, comply with all the laws, rules and requirements of the association.

The defendant was incorporated by chapter 496, Laws 1879, in which it was provided that the corporation should have power to make such constitution, by-laws, rules and regulations as it should judge proper for regulating and fixing the amount and time of payment of all fees, dues and funds of the corporation and for its grand council and branches, and that they respectively, as well as the defendant, should have the power of suspending any of its members (§ 3) ; that it should be lawful for the association to create, hold and disburse a beneficiary fund sufficient to pay all losses and expenses incident to the corporation and for the relief of members and their families of the branches and grand councils (§ 6); and that such beneficiary fund as may be deemed suitable may be set apart and provided to be paid over to the families, heirs or representatives of deceased members, or to such person as they may while living have directed ; and that the collecting, managing and disbursements, as well as the term and manner of payments on the death of a member, shall be regulated by the constitution, by-laws, rules and regulations of the corporation (§ 7).

The alleged defense is that Richard B. McGowan was in default in payment of assessment known as No. 18, made in January, 1892, and as the consequence was suspended from the rights of membership and remained so at the time of his death. It appears that such an assessment was made and that he became in default. The main question is whether as against him the assessment was legally made. This is matter of defense. It appears that it was the custom to keep the amount of an assessment in advance so far as it was practicable to do it, so that when a call from the grand lodge to pay

beneficiaries on the death of members should be made, the branches could, without the delay attending the taking in of the assessments made on account of such deaths, remit the amount through the proper channel to the depository of the defendant for distribution among the beneficiaries. In practical effect, therefore, the payment of the assessments was a reimbursement of the respective branches preparatory to another call from the defendant for a like purpose.

This method was permitted by the fact that on initiation each member was required to pay the branch in which he was received one beneficiary assessment. This initiation fee was paid by McGowan, and it may be assumed that he had paid all assessments made upon him prior to No. 18. The plaintiff challenges that one for the reason that McGowan, by the payment of them, including that paid at the time of initiation, had already contributed an assessment to the payment of the beneficiaries on account of whom the call was made, and that he could not be legally assessed to contribute to a beneficiary fund which might be required by future deaths of members, because such an assessment was not within the provisions of his contract of membership. While it is true that he could not properly be assessed to pay the beneficiaries of members whose deaths had not occurred, such in fact was not the assessment which the plaintiff seeks to repudiate. The constitution of the defendant provides that "the supreme recorder shall on the first of each month, or as soon thereafter as possible, issue one or two assessments, as may be required, to pay beneficiaries of deceased members then on record in his office, and shall notify the grand secretary of each grand council and the recording secretary of each branch in his immediate jurisdiction of the same; said notice shall contain the names of the deceased members, the number and location of the branch, date of death, cause of death, date of initiation, amount of certificate, and shall also state the deaths if any upon said notice that will be paid by surplus" (§ 7). It then provides for assessments and notice to contain the statements mentioned in section 7 (§ 9).

And further that all moneys so paid by members shall be retained by the treasurer of the branch until call is made, and that the money so collected shall be remitted, etc. (§ 11).

The assessment No. 18 conformed to the requirements before men-

tioned, and was dated January 6, 1892. The notice annexed to it was dated January 11, 1892, and it was served upon McGowan by mail on the day of the date of the notice. It may be observed that monthly assessments are provided for, and that they are made to pay the beneficiaries of deceased members mentioned in it. Such was the assessment in question. It thus necessarily appears that the beneficiary fund produced by the payment of the initiation fees of members is held as a reserve, except so far as it may be reduced by payments required to be made by surplus. This evidently is the policy of the corporation, as it is required to make an assessment early in each month to meet the demands of beneficiaries arising from deaths of members reported since that of preceding month. The purpose for which assessment is made rather than the fund from which it is paid is the important fact bearing upon its legitimacy. And inasmuch as the branch is permitted to have a reserve beneficiary fund originating from the payment of the initiation fee, it is quite unimportant for the purpose of the question here whether compliance with the call upon it is delayed until the assessments are paid in, or in anticipation of the receipt of them the amount is paid from that fund and remitted without such delay.

The proposition made by the plaintiff's counsel that, inasmuch as the defendant or the branch of which McGowan was a member had sufficient funds to pay the assessment, he could not be chargeable with default prejudicial to his relation to the defendant, is not supported by the case of *Knight* v. *The Supreme Council, etc.* (24 N. Y. St. Repr. 845), and *Evarts* v. *U. S. Mut. Accident Assn.* (40 id. 878). There the assured had paid assessments illegally made and for which it was held they were entitled to credit by way of relief from those for the non-payment of which the defendants sought to charge them with default.

In the present case McGowan had paid such sums only as the contract represented by the constitution and by-laws required of him, and the assessment in its purpose and effect was legitimately made. The effect, upon his relation as member, of default in payment of an assessment is declared by the contract, which provides that within twenty days after the date of the notice, which shall be mailed not later than five days after its date, each mem-

ber must pay into the beneficiary fund of his branch the amount of the beneficiary assessment as stated in the notice; and that if the assessment is not paid before the time of the next meeting of the branch "after the expiration of the said twenty days he is hereby declared to be suspended from all the rights of the association, and if a member die while suspended he is not entitled to participate in the beneficiary fund" (§ 10). McGowan did not pay his assessment within the time prescribed, nor was it paid at the meeting of the branch which was held February 1, 1892. He was there reported as in default, and by force of the provisions of the constitution before mentioned he was suspended. Afterwards, on February twenty-third, the sister of McGowan handed to the person who was the financial secretary of the branch before mentioned, money sufficient to pay his assessment, and it was handed to him for that purpose. He gave no receipt for it, and he testified that he informed her that he could not, as he had no authority to do so, but would take it to the branch the following Monday and ask that the member be reinstated, and if that was done he would mail a receipt for the money. The sister says he gave no reason for not giving her a receipt. This fact, however, may not be important. McGowan died before the next Monday, and the money was returned and left at the residence of plaintiff.

The money was not received by the defendant, nor was the payment of it to the person who was such officer effectual to support or restore McGowan's relation of membership. Upon that subject the constitution for the government of branches of the defendant provides that the financial secretary "shall not receive any beneficiary money from any suspended member unless the same is tendered in open branch meeting" (art. 6, § 5). This was one of the conditions upon which McGowan became a member. While an unconditional receipt by the association of an assessment after the time has expired might constitute a waiver of the default and operate to reinstate the member, the receipt of it by an officer with qualified power will not, in the face of the provision before mentioned, have that effect unless its payment to him is in some manner ratified by the association. There was in the case at bar no waiver nor any estoppel by recognition of him as a member after his default in payment of the assessment. (*Ronald* v. *M. R. F. L. Assn.*, 132 N. Y. 378; 23

Abb. N. C. 271; *Mut. P. L. Ins. Co.* v. *Laury*, 84 Penn. St. 43; *Rice* v. *N. E. Mut. Aid Soc.*, 146 Mass. 248.)

It is seen that the payment of assessments within the time prescribed was by the contract made a condition of the continuance of membership, and when that condition is not observed the default operates to suspend the relation which the member had assumed to the association, and without some act on its part, effectual as a waiver, or having the effect to reinstate him, his death gives no right of recovery to his beneficiary under the certificate. (*Lyon* v. *Royal Society of G. F.*, 153 Mass. 83; *Harvey* v. *Grand Lodge, etc.*, 50 Mo. App. 472.) The plaintiff offered to prove that it had been the custom of this branch of the defendant to receive assessments and dues after the expiration of the time designated in the constitution for payment; that such payments were made to the financial secretary after members had been suspended, and received outside the lodge, and were adopted and ratified by it, and that such members were not afterwards disfranchised of their rights in the lodge. And to the exclusion of the evidence exception was taken. The constitution provides for reinstatement of a suspended member and how it may be done. The evidence offered would not tend to prove that McGowan had any knowledge of any such custom, or that he had ever been indulged in that manner. The mere fact that it had been granted to others does not enable the plaintiff to effectually assert a waiver of the default on the part of the assured, of whom she was beneficiary. The waiver asserted by the plaintiff is in the nature of estoppel, and to support it the plaintiff must be able to say that he was induced by the course of dealing of the defendant to rely upon it for the protection of his membership. The evidence offered would not support any claim of the plaintiff to waiver or estoppel. (*Appleton* v. *Phœnix Mut. L. Ins. Co.*, 59 N. H. 541; 47 Am. Rep. 220; *Crossman* v. *Mass. B. Assn.*, 143 Mass. 435.) There was no error in the ruling, and the verdict was properly directed for the defendant.

The plaintiff's motion for a new trial should be denied, and judgment directed for the defendant on the verdict.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant upon the verdict.